# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 249 | DATE | 8/27/2003 |
| CASE TITLE | Springfield Oil Drilling Corporation vs. Fred Weiss | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff's motion for summary judgment (Doc. 18-1) is granted and Defendant's motion (Doc. 19-1) is denied. The court orders that Weiss pay to Springfield Oil, the transferee in interest on the notes, the full amount of the principal, plus interest and attorney's fees as subject to the subscription agreement–a total of $166,482.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 2 number of notices | Document Number |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | AUG 2 8 2003 date docketed | 35 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | MR docketing deputy initials | |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 8-27-03 date mailed notice | |
| ETV | courtroom deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SPRINGFIELD OIL DRILLING )
CORPORATION, )
 )
        Plaintiff, )
 )
v. ) No. 02 C 249
 )
FRED WEISS, ) Judge Rebecca R. Pallmeyer
 )
        Defendant. )

DOCKETED
AUG 28 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Springfield Oil and Drilling Corporation ("Springfield") brings this action against Defendant Fred Weiss ("Weiss") to enforce three subscription notes that Weiss executed for purchase of a half share in a limited partnership, Haskell Associates ("Haskell"), nearly twenty years ago.[1] Weiss claims that he has no obligation to pay the notes or, in the alternative, that he is entitled to set-offs in the amount of some or all of the indebtedness. Both sides have moved for summary judgment. For the reasons explained here, Plaintiff's motion is granted, Defendant's is denied, and Defendant is ordered to pay the notes in full.

## FACTUAL BACKGROUND

On or about December 21, 1984, the Defendant entered into a subscription agreement with Haskell, a limited partnership formed under Delaware law. (Plaintiff's Rule 56.1 Statement of Undisputed Material Facts ¶ 5) (hereinafter "Pl.'s 56.1").) Under the terms of the agreement, Defendant purchased a one-half unit interest in the limited partnership at a price of $144,500. (Pl.'s 56.1 ¶ 5.) Haskell's stated purpose was to acquire working interests in oil wells to be drilled across the United States during 1984, 1985, and 1986; however, both parties admit that Haskell was

---

[1] The Court's jurisdiction is secure; Springfield is a Texas corporation with its principal place of business in New York, Weiss is an Illinois citizen, and the face amount owed on the notes (not including interest and attorneys' fees, also sought here) is $144,500.

established as a "tax shelter," under which limited partners could take the losses from the partnership's business and trade activities as deductions on their federal income tax forms. (Defendant's Rule 56.1 Statement of Undisputed Material Facts ¶ 8) (hereinafter "Def.'s 56.1").) Weiss himself admits participating in the limited partnership not because of an interest in the oil and gas industry, but solely to shield his personal income from taxes. (Id.)

Weiss paid $12,500 of the $144,500 towards the cost of his one-half interest at the time of purchase, and executed interest-bearing subscription notes for the remaining amount, three of which remain unpaid. (Pl.'s 56.1 ¶¶ 6, 7.) On or about December 21, 1984, Weiss signed the three notes, requiring him to pay to Haskell: (1) $48,500 by December 21, 1999; (2) $17,750 by December 31, 2000; and (3) $40,750 by December 31, 2001. (Pl.'s 56.1 ¶ 8.) Each of the Subscription Notes stated that "the undersigned shall be personally liable for payment of the principal balance of the Note, plus all interest." (Subscription Notes 1-3.) Language in Note 3 provided that, under certain circumstances, Weiss would be authorized to declare that particular note unenforceable. These two circumstances identified were: (1) if the Internal Revenue Code changed such that Weiss would be unable to claim the losses generated by Haskell during 1986, or (2) if there were a decrease of more than 10 percent of the income tax brackets at which Weiss's income would be taxed.[2] (Def.'s 56.1 ¶ 11.)

On the same day he signed the notes, Weiss executed a "Receipt for Private Placement Memorandum and Representations," acknowledging that he had received a Private Placement Memorandum from Haskell's General Partner, Richard Gersham. (Defendant's Reply to Plaintiff's Rule 56.1 Statement of Undisputed Material Facts ¶ 14) (hereinafter "Def.'s Reply".) Weiss also signed an "Offeree Representative Letter," which confirmed that he had reviewed and understood

---

[2] Weiss notes in his 56.1 Statement that the Tax Reform Act of 1986 reduced the highest tax brackets from fifty percent to thirty percent. (Def.'s 56.1 ¶ 16.) Weiss provides no evidence of his personal income tax bracket, or that the lowering of the upper tax bracket affected his personal income tax rate in any way.

the Private Placement Memorandum. All investors in the Haskell limited partnership received the Private Placement Memorandum, which stated that each limited partner would be personally liable for the amounts of the subscription notes. (Pl.'s 56.1 ¶ 13.) Additionally, if the partnership proved unable to generate revenue from its ventures in the drilling of oil wells, each limited partner would still be responsible for a cash repayment of the principal on the notes. (*Id.*)

According to Springfield's Vice-President, Jerry Karlik, Haskell sent to Weiss IRS Schedule K-1 forms for every year between 1984 and 1997 that reflected his share of the income, or losses, that were allotted to him under the limited partnership agreement each year.[3] (Pl.'s 56.1 ¶ 15.) The function of the annual K-1 form was to confirm the losses or gains Weiss received from Haskell for income tax purposes.[4] The Haskell limited partnership was ultimately unsuccessful, and dissolved in 1997. On December 31, 1997, Haskell assigned its interest in the subscription notes to Springfield Oil and Drilling Corporation. (Pl.'s 56.1 ¶ 16.) Springfield had been involved in the limited partnership since its inception, having been paid by Haskell to drill a series of wells in the mid-1980s pursuant to the partnership's stated purpose. (Affidavit of Jerry Karlik ¶ 5) (hereinafter "Karlik Aff.").)

Weiss has to date made no payments on any of the three subscription notes. (Pl.'s 56.1 ¶ 17.) Springfield informed Weiss by mail that he was in arrears on his obligation, but Weiss has refused to comply, claiming he is under no obligation to pay the notes. (Pl.'s 56.1 ¶ 18-19.) In this lawsuit, Springfield seeks recovery of the principal amount owed, plus interest and an additional

---

[3] The final K-1 form sent to Weiss, for the year 1997, is a source of contention between the parties. The form shows a negative balance of $69,152 in Weiss's capital account at the beginning of the year, and a balance of $0 at the end of the year. Weiss claims this shows he should have received a distribution; because he did not, Weiss argues that the amount should be credited against the principal due on the notes. (Def.'s 56.1 ¶ 15.)

[4] Weiss admits reporting the amount on his tax forms for the years 1984-86, but the evidence cannot confirm this. Weiss's tax records were destroyed by fire, his accountant, Howard London, did not retain copies, and the record shows no effort to retrieve the forms from the IRS.

15 percent penalty in attorneys' fees, authorized under the Subscription Agreement. (Pl.'s 56.1 ¶ 21.) As of December 31, 2002, Springfield claims that Weiss owes $74,988 on Note 1, $27,761 on Note 2, and $63,733 on Note 3, for a total amount of $166,482. (Pl.'s 56.1 ¶¶ 22-24.) Weiss denies this assertion, and further informed Springfield's attorneys on December 12, 2002 that he had elected to declare Note 3 unenforceable due to changes in the Internal Revenue Code.[5]

## DISCUSSION

On these cross-motions for summary judgment, Defendant Weiss raises two major sets of defenses to Plaintiff Springfield's claim for payment on the notes: First, Weiss claims that Springfield, as a transferee of a negotiable instrument, is not a holder in due course and is therefore subject to standard contract defenses, including the following: (1) the notes were executed in connection with an oral agreement that Weiss would never have to repay them, and therefore are not enforceable due to a lack of consideration; (2) the notes, which were executed in furtherance of Weiss's intention to be a part of a tax shelter, no longer served that purpose after the passage of the Tax Reform Act of 1986, and thus are not enforceable due to the doctrine of frustration of purpose; and (3) the notes are not enforceable because, as a public offering not registered with the Securities and Exchange Commission (SEC), they violate the Securities Act of 1933.

The Defendant further argues, in the alternative, that if the court finds the notes enforceable, he is entitled to set-offs that reduce significantly the amount he owes. Weiss claims that: (1) he exercised his option to rescind Note 3 because changes in the Internal Revenue Code due to the Tax Reform Act of 1986 ended Haskell's effectiveness as a "tax shelter," and (2) he did

---

[5] As Springfield notes, Weiss elected to make Note 3 unenforceable in writing nearly a year after this lawsuit was filed, and six days after his deposition, which may have been the first time he realized that the option was available. Since the provisions of Note 3 include no time limit, however, the court presumes Weiss is eligible to avoid payment if one of the two conditions has been met.

4

not receive a distribution of $69,152 in 1997 to which he was entitled, and that amount must now be applied to reduce the principal and interest he owes.

A motion for summary judgment will be granted only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In determining whether a genuine issue of material fact exists, the court should consider the evidence in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). These standards apply even where, as here, both parties have moved for summary judgment. The court will consider the merits of each motion separately and draw reasonable inferences in favor of the non-movant on each motion; this "Janus-like perspective . . . sometimes forces the denial of both motions," but only where there are material facts in dispute. *Buttitta v. City of Chicago*, 803 F.Supp. 213, 217 (N.D. Ill.1992). The Seventh Circuit has observed that cases involving contract interpretation are particularly well-suited to disposition upon summary judgment. *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 871 (7th Cir. 2001); *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 419 (7th Cir. 1998), *cert. denied*, 526 U.S. 1087 (1999).

### A. Choice of Law

Both Plaintiff and Defendant raise the issue of choice of law in their respective motions. Defendant claims that Illinois law must apply, while Plaintiff claims that either Delaware or Illinois law may apply, and cites cases from both jurisdictions in its briefs. Plaintiff further avers that this court need not settle the issue of which state's law applies because Illinois and Delaware do not differ on the legal issues raised by this motion. The court recognizes, however, that "even in the absence of a 'true conflict,'" it is "obliged to choose the applicable law." *Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1387 (7th Cir. 1994). Plaintiff correctly notes that the Haskell Limited Partnership Agreement contains an express provision stating that Delaware law controls the

5

"Agreement, the application or interpretation thereof and the liability of the parties hereto." (Agreement of Limited Partnership (hereinafter "Lim. Part. Agreement"), Haskell Associates ¶ 11.4.) The subscription notes themselves, in contrast, do not contain a choice of law provision.

A federal court sitting in diversity looks to the conflict-of-laws rules in the state in which it sits to choose the substantive state law applicable to the case. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). In dealing with choice-of-law issues in the area of contract law, the Illinois Supreme Court has applied the "most significant contacts" test from the Second Restatement of Conflicts. *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1115 (7th Cir. 1995). Under this test, the factors relevant to a choice-of-law decision include "the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicil[e], residen[ce], place of incorporation, and business of the parties." *Id.*, quoting *Palmer v. Beverly Enters.*, 823 F.2d 1105, 1109-10 (7th Cir. 1987). Here, the Defendant and maker of the subscription notes is a resident of Illinois and is domiciled there, and the notes were executed here. Thus, the ties of Haskell and Springfield to other jurisdictions notwithstanding, this court will apply the state law of Illinois to this case.

## B. The Enforceability of the Promissory Notes

Defendant claims that the promissory notes are subject to basic contract defenses because Springfield is not a holder in due course.[6] Defendant insists that Springfield cannot be considered a holder in due course because the notes are not negotiable instruments. Springfield does not argue the point in its response to Defendant's motion for summary judgment, so the court will

---

[6] Illinois law defines a "holder in due course" as the holder of an instrument who took the instrument "(i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 3-306, and (vi) without notice that any party has a defense or claim in recoupment stated in Section 3-305(a)." 810 ILCS 5/3-302(a)(2).

assume for purposes of summary judgment that Springfield was not a holder in due course, and that Weiss may bring his basic common law defenses for breach of contract. 810 ILCS 5/3-305(a)(2).

Weiss raises three general common law defenses to the enforceability of the notes: (1) there was no valid consideration for the notes because Haskell's agents promised to Weiss that he would not have to repay them, (2) the purpose of the limited partnership–to serve as a "tax shelter" for Defendant–was frustrated by the passage of the Tax Reform Act of 1986, and (3) the limited partnership was a public securities offering not registered with the SEC, in violation of the Securities Act of 1933.

### 1.     Admissibility of Parol Evidence

The Defendant first argues that the promissory notes are unenforceable because they were executed without valid and bargained-for consideration. In support of this, Weiss relies on testimony in his deposition, his affidavit, and the deposition of his long-time accountant Howard London ("London"). Weiss asserts that, prior to purchasing his half-share in the limited partnership, he was told by Mr. Bentley Blum ("Blum"), an individual whom he believed acted under the authority of Haskell, that he would not be required to pay back any of the principal or interest associated with the subscription notes. Since Weiss was purportedly told he would never have to repay the notes before he signed them, he claims the notes are invalid.

The primary Illinois case cited by Weiss to support his claim, *Davis v. Buchholz*, 101 Ill. App. 3d 388, 428 N.E.2d 198 (3rd Dist. 1981), does not establish that a contracting party may rely on his own failure to give consideration as a defense to payment of promissory notes. In *Davis*, an apartment manager sought payment on promissory notes he claimed had been given in exchange for his services; the court concluded that parol evidence was admissible to establish the building owner's defense that the parties' agreement was conditioned on the building's generating a profit.

7

*Id.* at 392, 428 N.E.2d at 201. *Davis* stands for the "conditional delivery" exception to the parol evidence rule, a narrow exception which allows the court to consider evidence that a contract was to take effect only upon one party's compliance with a condition. The condition must be to the formation of the contract itself, however, not merely to payment or performance. *See Baker v. Gray*, 141 Ill. App.3d 444,446, 490 N.E.2d 221,223 (4th Dist. 1986). Weiss is not arguing that the promissory notes were intended to take effect only on compliance with a certain condition, and the "conditional delivery" exception therefore has no application here.

The parol evidence on which he relies is not admissible. The record regarding the alleged oral agreement is as follows. In his deposition, taken on December 6, 2002, Weiss described a phone conversation he had with Blum. (Weiss Dep., 44:16-45:6.) A mutual friend introduced Weiss and Blum, and Weiss believed at the time of the phone conversation that Blum owned Haskell Associates.[7] (Weiss Dep., 43:9-11.) Weiss testified that Blum told him that he had already invested $12,500 in the Haskell oil and gas partnership and that "the rest of the notes are going to be paid out of the profits." (Weiss Dep., 45:19-20.) Weiss was unable to provide any further details of the conversation, such as his location when he spoke with Blum or whether the men had any subsequent phone conversations. In his affidavit, submitted on January 15, 2003, Weiss revised his recollection of the conversation, claiming that "prior to entering the limited partnership, I was informed by an individual I believed to have had authority in this matter that I would not be required to pay back any of the principal or interest associated with the subscription notes required to be signed in order to complete the transaction." (Weiss Aff. ¶ 4.)

In his deposition, Weiss's accountant, Howard London ("London") recalled discussions he had with Weiss around the time he signed the agreement, as well as a phone conversation the two

---

[7] In fact, Blum is the President of Plaintiff Springfield Oil and Drilling Company. (Karlik Dep., at 30:2, 34:15-35:2.) The record does not indicate that either party attempted to depose Blum for purposes of this litigation.

8

men had with an organizer of the partnership, whose identity he could not recall (but whom a reasonable observer might imply was Blum). London stated that Weiss was "concerned about . . . not being liable for anything" at the time he entered into the agreement, but that Weiss was "apparently reassured in the conversation that he wouldn't owe anything beyond what he was putting in and would get some money back out of the deal." (London Dep., 39: 8-16.) London acknowledged that he "can't recall the exact conversation," but he testified that the organizer reassured Weiss that signing the subscription notes was "like a formality, and the operation will take care of it, and [Weiss] won't have any future liability." (London Dep., 40:7-12.) When asked if the organizer told Weiss that he was "signing the subscription agreements as a formality," London responded affirmatively. (London Dep., 42:18-22.) In London's estimation, Weiss "seemed fairly satisfied he would not have any further liability other than what he was putting into the deal initially [the $12,500]." (London Dep., 24:14-18.)

The court has little difficulty in concluding that this evidence does not alter Weiss's obligations on the notes. The parol evidence rule in Illinois "generally precludes evidence of understandings, not reflected in a writing, reached before or at the time of its execution which would vary or modify its terms." *Eichengreen v. Rollins, Inc.*, 325 Ill.App.3d 517, 521, 757 N.E.2d 952, 956 (1st Dist. 2001), quoting *J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 162 Ill.2d 265, 270, 642 N.E.2d 1215, 1227 (1994). Here, the language of each subscription note provides that "the undersigned will be personally liable for the payment of the principal balance of this Note, plus all interest." (Subscription notes 1-3.) Each note further states that it "may be pledged to third parties for obligations of the Partnership," and that "the undersigned hereby agrees to be personally liable as a co-maker on any of such obligations." (Id.) Both the Subscription Agreement and the Limited Partnership Agreement that Weiss signed on December 21, 1984 expressly mention the subscription notes and contain language similar to that found in the notes. (Subscription Agreement, at 1; Lim. Part. Agreement, Art. 2.4.3.) Finally, the Private Offering Memorandum,

9

which Weiss acknowledged receiving, stated: "There is no assurance that the [Partnership's activities] will generate enough revenues to pay the Subscription notes. Should such revenues fail to be generated, the Limited Partners will still be responsible for a cash payment to the Partnership." (Haskell Private Offering Memorandum (hereinafter "POM"), at 20.)

Certainly, parol evidence may on occasion be considered by a court to assist in its interpretation of a document, or even, in some cases, invalidate that contract. *Main Bank of Chicago v. Baker*, 86 Ill.2d 188, 199, 427 N.E.2d 94, 98-99 (1981). Illinois law clearly establishes, however, that such evidence cannot be used when the terms of a document are clear and unambiguous. *Id.* As the language of the subscription notes and related agreements is unconditional, and the written documents are a written and final expression of the parties' intent, Defendant may not use his deposition testimony or that of his accountant to avoid liability under the subscription notes.[8]

## 2. Frustration of Purpose

Weiss's next argument is that the Haskell limited partnership was established as a tax shelter, and that he entered into the limited partnership for the sole purpose of enjoying the tax benefits of being involved in such a shelter. Since the Tax Reform Act of 1986 allegedly destroyed the purpose for which Weiss signed the agreement, and this change in the tax laws was not foreseeable at the time the notes were executed, Weiss claims that any further obligation under the notes was discharged under the doctrine of frustration of purpose.

Under the doctrine of commercial frustration, the contracting parties are "absolved from their

---

[8] The court notes that, even if the evidence were admissible, neither Weiss's own deposition testimony nor that of his accountant supports the unconditional assertion in his affidavit that he would "not be required" to pay back the notes. Haskell partners may well have used persuasive language in their attempt to convince Weiss that a share in the limited partnership was a safe investment, but Weiss offers no evidence that Haskell made the outright claim that Weiss would be free of liability, without also including the condition that the "profits" or "operation" of the partnership would be needed to extinguish the obligation.

10

obligations, not because subsequent contingencies have rendered performance impossible, but because the contract was not in reality an absolute contract, binding them to perform under such changed conditions." Leonard v. Autocar Sales & Serv. Co., 392 Ill. 182, 188-89, 64 N.E.2d 477, 480 (1945). For example, in Smith v. Roberts, the court found that the commercial frustration doctrine terminated a lease on a building adjacent to tenant's main store after the main store was completely destroyed by a fire. 54 Ill.App.3d 910, 370 N.E.2d 271 (4th Dist. 1977). The doctrine of commercial frustration has not been applied liberally by the courts; to the contrary, it is available only where the defendant can satisfy two rigorous tests: (1) the frustrating event was not reasonably foreseeable at the time the contract was made, and (2) the value of counterperformance was totally or nearly totally destroyed by the frustrating cause. Id. at 913, citing Greenlee Foundries v. Kussel, 13 Ill.App.3d 611, 301 N.E.2d 106 (1st Dist. 1973).

As Springfield points out, the change in the tax laws removing the benefits of Haskell as a tax shelter was not unforeseeable at the time the Subscription notes were executed. To the contrary, an express provision in Note 3 grants the maker of the note the right to rescind it "if the Congress of the United States should change the Internal Revenue Code so that the maker is unable to claim the losses generated by the holder's activities during 1986." (Note 3.) The inclusion of such an explicit provision, just eighteen months before the passage of the Tax Reform Act, demonstrates that Weiss was on notice of the possibility that a change in the tax laws might jeopardize Haskell's viability as a tax shelter and alter the value of his investment. Weiss, who bears the burden of proof, offers no evidence that legislative change was not foreseeable in December 1984. See Illinois-American Water Co. v. City of Peoria, 332 Ill.App.3d 1098, 1106, 774 N.E.2d 383, 391 (3d Dist. 2002) (refusing to apply doctrine of commercial frustration because defendant failed to provide evidence that enactment of public utilities law was not foreseeable to the parties when contract was entered into). Thus, Weiss's frustration of purpose defense fails to meet the first prong of the Illinois-American test.

11

Even if this Court were to find that the change in the Internal Revenue Code was not foreseeable, Weiss's defense would still fail as the event did not totally or almost totally destroy the value of the parties' performance. The 1986 Act did effectively end Haskell's viability as an income tax shelter, but Weiss received considerable benefits from the partnership by taking the losses from the partnership as deductions from his income tax from 1984 through 1986. The possibility that such benefits would not continue indefinitely was expressly contemplated by the parties. Thus, the frustration of purpose doctrine cannot apply.

### 3. Applicability of Securities and Exchange Act

Weiss's third defense is that the subscription notes are unenforceable because the Haskell subscription agreement was a public offering not registered with the SEC, in violation of the Securities Act of 1933. Weiss notes, correctly, that as a matter of public policy courts will not enforce actions to collect on securities sold in violation of the 1933 Act. *Johnston v. Bumba*, 764 F.Supp. 1263, 1271 (N.D. Ill. 1991). It is undisputed that Section 5 of the 1933 Act requires that all securities be registered with the SEC, and it is also undeniable that the Haskell limited partnership was not registered. Nor does Springfield dispute Weiss's contention that, under Illinois law, the promissory notes constitute "investment contracts" and are subject to federal securities laws. *See Ronnett v. Am. Breeding Herds, Inc.*, 124 Ill.App.3d 842, 847, 464 N.E.2d 1201, 1203 (1st Dist. 1984), citing *Securities & Exchange Comm'n v. W.J. Howey*, 328 U.S. 293, 298-99 (1946). This Court will therefore accept Weiss's arguments that the notes be considered "securities," and focus its analysis on Springfield's contention that the subscription notes fall within the private offering exemption to the 1933 Act.

Securities generally must be registered with the SEC, but an exemption exists for those securities that are offered privately, rather than publicly. The U.S. Supreme Court has held that, in determining whether a security has been privately or publicly offered, the "focus of inquiry should

12

be on the need of the offerees for the protections afforded by registration." *Securities & Exchange Comm'n v. Ralston Purina Co.*, 346 U.S. 119, 127 (1953). Courts consider four factors in determining whether an offering is public or private: (1) the number of offerees and their relationship to each other and to the issuer; (2) the number of units offered, (3) the size of the offering, and (4) the manner of the offering. *Cogniplex, Inc. v. Ross*, 2001 WL 436210, at *11 (N.D. Ill. Apr. 27, 2001); *Johnston*, 764 F.Supp. at 1272-73; *Securities & Exchange Comm'n v. Continental Tobacco Co. of South Carolina, Inc.*, 463 F.2d 137, 158 (5th Cir. 1972). The burden of proof rests on the party attempting to invoke the private offering exemption and avoid registration with the SEC. *Cogniplex*, 2001 WL 436210, at *11; *Johnston*, 764 F.Supp at 1273; *Continental Tobacco*, 463 F.2d at 156.

Springfield points to several pieces of evidence to show that the Haskell limited partnership should fall within the private offering exemption to the 1933 Securities Act. The most significant is Weiss's signature on the Receipt for Private Placement Memorandum (hereinafter "RPPM") and Offeree Representative Letter, both dated December 21, 1984. By affixing his signature to these documents, Weiss averred that:

(1) he understood "the Units representing limited partners' interests in the Partnership ("the Units") will be offered and sold in reliance upon the private offering exemption of the Securities Act of 1993" (RPPM, at 1);

(2) he was "sufficiently experienced in oil and gas investment and business matters to analyze and evaluate the information contained in the [agreements] as featured" (RPPM, at 2);

(3) he understood that the general partner had not filed a registration statement with the SEC and did not plan to do so, which placed restrictions on his ability to transfer or liquidate his interest in the partnership (RPPM, at 2); and,

(4) he declined, based upon his "net worth" and "full and complete understanding of all of the business and tax ramifications of this private offering. . .to have a purchaser representative as defined in the Securities Act of 1933, as amended" advise him on his investment decision. (Offeree Letter.)

13

Springfield cites Weiss's assent to these statements as evidence that he was a sophisticated investor not in need of the protections of the Securities Act. The court agrees.

The case in which the Seventh Circuit has come closest to addressing the Supreme Court's opinion in *Ralston Purina* involved the sale of a working interest in an oil and gas well. *Acme Propane, Inc. v. Tenexco, Inc.*, 844 F.2d 1317 (7th Cir. 1988). The court held that "the plaintiffs' acquiescence in the sale without registration means . . . that plaintiffs are sophisticated, informed, and probably wealthy investors, 'those who are shown to be able to fend for themselves.'" *Id.* at 1321. This last phrase quotes the language of *Ralston Purina*, in which Justice Clark wrote that "[a]n offering to those who are shown to be able to fend for themselves" is not a public offering. 346 U.S. at 125. The documents Weiss signed stated clearly that the Haskell limited partnership was intended as a private offering and would not be registered with the SEC. By executing the POM and Offeree Letter, Weiss left no doubt that he acquiesced in the sale of the interest in the Haskell Partnership without registration.[9] These actions, combined with his admission of investment experience and decision to forego reliance on a purchaser representative in the transaction, constitute significant evidence that Weiss was a sophisticated, informed investor, and not the type of individual to whom the protections of the 1933 Securities Act were intended to apply.

Weiss nevertheless insists that the limited partnership constituted a public offering, and concentrates heavily on two recent cases from this District Court, *Cogniplex* and *Johnston*, in which the party attempting to invoke the private offering exemption was unable to meet the burden of proof by a preponderance of the evidence.[10] It is true that Springfield has presented no evidence

---

[9] Weiss repeatedly refers in his briefs to the POM and Offeree Letter as "self-serving" and "uncorroborated." His choice of language is misguided. The documents are not affidavits or testimony prepared in anticipation of this litigation; rather, they are part of a legal contract entered into, and presumably understood, by Weiss himself.

[10] The court agrees that *Johnston v. Bumba* provides a somewhat similar factual pattern to this case but Defendant's statement that the court should "recognize that the. . .case is
(continued...)

14

that Weiss had a relationship with Haskell Associates or Springfield prior to being contacted regarding the partnership, and that a lack of a prior relationship between the parties supports the notion that the offering is public, rather than private. In addition, Weiss provides evidence that Haskell made payments to a company called Continental Broker-Dealer Corp., for the purposes of soliciting investors for securities offerings. (Karlik Dep., at 49.) There is no evidence, however, that Weiss himself, or any other limited partner, was solicited by a "cold call"; Weiss actually testified at his deposition that he was introduced to Haskell through a friend, Mark Palmer. (Weiss Dep., at 42.)

*Johnston*, like the instant case, involved an offering to participate in a tax shelter,. Unlike this case, however, there was no indication in *Johnston* that the defendant himself, by affixing his signature to legal documents, acknowledged that he knew the interest was being offered without registration, that he was an informed investor, and that he understood the ramifications of signing on to such an agreement. To the contrary, in *Johnston*, the offering party did not provide the necessary information to the maker in the offering memorandum; in fact, the document contained misrepresentations and actual omissions of fact. *Johnston*, 764 F.Supp at 1278. There is no basis for such a finding here. Similarly, in *Cogniplex*, the court found that the defendant had not met its burden of showing that plaintiffs were sophisticated investors not in need of the protections of the Securities Act. *Cogniplex*, 2001 WL 436210, at *12. For the reasons cited above, the court finds that Springfield has met its burden in this case.

To invoke the private offering exemption, Springfield must show by a preponderance of the evidence that Weiss was a sophisticated investor to whom the protections of the Act should not

---

(...continued)
controlling in this matter" is inaccurate. As a matter of law, prior decisions by courts in the Northern District of Illinois are considered highly persuasive, but not binding or controlling on this court. *See United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987) ("A single district court decision ... is not binding on the circuit, or even on other district judges in the same district"). Regardless, as stated above, the case is distinguishable on factual grounds.

apply. The production of documents in which Weiss himself assented to this very notion provides more than enough evidence that this was intended as a private offering. As Defendant's third and final defense to the enforceability of the notes fails, the court finds that the three Subscription notes executed by Weiss on December 21, 1984 are enforceable. As such, it grants Plaintiff's motion for summary judgment on this issue and denies Defendant's cross-motion for summary judgment.

## C.  Set-Offs to the Amount Owed Under the Notes

Having concluded Weiss is liable to Springfield Oil for payment on the notes, the court now turns to Defendant's alternate argument that there are, as a matter of law, certain set-offs that reduce the total amount he owes. Weiss claims that: (1) he elected to rescind Note 3 based on the trigger of a provision within the language of the note, and (2) because he did not receive a capital distribution in 1997 to which he was entitled, the amount owed on the notes should be reduced by the amount of the distribution.

### 1.  Defendant's Purported Rescission of Note 3

Weiss's first claim is that, pursuant to a provision within Note 3, he elected to rescind that note. Unlike the other two promissory notes, Note 3 included a provision that stated:

> THIS NOTE SHALL BE UNENFORCEABLE, AT THE ELECTION OF THE MAKER, IF THE CONGRESS OF THE UNITED STATES SHOULD CHANGE THE INTERNAL REVENUE CODE SO THAT THE MAKER IS UNABLE TO CLAIM THE LOSSES GENERATED BY THE HOLDER'S ACTIVITIES DURING 1986, OR IF THERE IS A LOWERING OF MORE THAN 10% OF THE INCOME TAX BRACKETS THAT THE UNDERSIGNED'S INCOME WILL BE TAXED, SOLELY BY ACT OF THE CONGRESS OF THE UNITED STATES. (Note 3).

Weiss claims that he elected to make the note unenforceable when he refused to repay the amount indicated by the note, even when prompted by Springfield, and when he sent a formal letter to that effect to Springfield on December 12, 2002. (Weiss Aff. ¶ 6.) The provision at issue contains no time limit in which Defendant was required to exercise his option. Weiss must nevertheless show that one of the two conditions occurred which would have allowed him avoid his financial obligation

16

without breaching the agreement. No such showing has been made.

First, as Springfield notes in its brief, the Tax Reform Act of 1986 was enacted on October 22, 1986, but did not take effect until January 1, 1987. As Weiss was able to take the losses generated by the Haskell limited partnership as deductions from his taxes in 1986, the first condition in Note 3 was not met. Second, the Tax Reform Act may have reduced the highest personal income tax rate from 50 to 30 percent, but Weiss provides no evidence, and in fact does not even assert in his brief, that his own income tax rate was lowered by more than 10 percent by the Act, as the second condition in the Note 3 provision requires. Weiss's tax records from 1984 to 1994 cannot be retrieved, and Weiss cannot recall his income from that period. Weiss therefore cannot provide evidence to create a genuine issue of material fact as to whether he met either of the conditions in the provision.

### 2. Defendant's Entitlement to a Capital Distribution or Set-Off

Weiss's final defense is that a cash distribution to which he claims to be entitled should now be applied to the amount owed on the notes. He claims that the K-1 tax form he received for 1997 shows that he had a capital account balance at the beginning of the year of $69,152, and that the same form shows that by the end of the year, the balance was zero. Therefore, Weiss asserts, he was entitled to a distribution of $69,152, either in the form of cash or a reduction on the principal and interest owed on the subscription notes. Since Springfield has provided no evidence that Weiss received a cash distribution for the amount, Weiss claims that Haskell Associates or Springfield simply retained the money. He now seeks to apply the $69,152 to the amount he owes on the subscription notes. This would eliminate the principal on Notes 1 and 2 and reduce the principal on Note 3, lowering the total amount owed to the remaining principal on Note 3 plus interest and attorneys' fees, or $48,035 (without accounting for interest).

According to Weiss, the K-1 tax forms for the years prior to 1997 show a dollar amount

17

contributed to Weiss's capital account balance each year. Weiss says this amount was rolled over from year-to-year, allegedly in violation of the Limited Partnership Agreement, which states that "at the end of each year, the capital account balance of each Limited Partner shall be applied as a credit against the outstanding principal balance due on the Subscription notes." (Lim. Part. Agreement, at 5.)

Neither party has provided an extensive explanation of the taxation of partnership income, and the court does not presume to any expertise in the area. The court nevertheless concludes that the materials Weiss has submitted do not establish his right to the set-off he seeks here. As this court reads the K-1 forms for the years 1984 through 1997, they do not reflect a positive balance in his capital account. Instead, the K-1 forms actually show that from 1988 through 1997, Weiss ran a capital account balance made up of steadily accumulating passive losses. The 1997 K-1 form shows that Weiss's account balance at the beginning of 1997 was negative, rather than positive; Springfield points this out in its brief, and Weiss is hard-put to challenge this assertion. By the end of 1997, Weiss's account deficit was reduced to zero. The Limited Partnership Agreement provides for application of the capital account balance against the principal balance of the notes. Where that capital account balance was zero, there were no funds to be applied against the balance Weiss owed on the notes. The court concludes that Haskell did not breach the Limited Partnership Agreement.

As Weiss's accountant (London) explained at his deposition, the $69,152 was allocated by Haskell to Weiss as income. (London Dep. 53:10-55-1, att. as Ex. B to Weiss's Exhibits to Weiss Cross-Motion Memo.) London explained that by 1997, Weiss had accumulated passive losses that could offset any tax he owed on passive income. Thus, the $69,152 was allocated to Weiss against his share of Haskell's accumulated losses, with the result that by the end of 1997, Weiss had no passive loss. (*Id.*)

Springfield's Vice-President, Jerry Karlik, corroborated London's testimony; he explained

that Weiss never received a check or other disbursement in the amount of $69,152, because that amount granted to him as income was "not money." (Karlik Dep., at 12:21-13:2.) The court understands this as meaning that the income was not distributed to partners as cash. Rather, Weiss's own accountant suggested that the amount listed on Weiss's K-1 form was assigned to him so that he could take deductions for the passive losses that the Haskell partnership had accumulated over the previous decade. Weiss offers no basis for his suspicion that the transaction his accountant described was improper. More importantly, the court does not agree that his capital balance of zero provides a basis for a set-off against his obligations on the notes.

## CONCLUSION

Defendant Fred Weiss offers several defenses to Plaintiff Springfield Oil's suit for breach of contract. None of the evidence he offers, however, raises a genuine issue of material fact as to his ability to avoid liability for his half-share interest in the Haskell Associates limited partnership, as represented by the three Subscription notes he signed on December 21, 1984. Plaintiff's motion for summary judgment (Doc. 18-1) is granted and Defendant's motion (Doc. 19-1) is denied. The court orders that Weiss pay to Springfield Oil, the transferee in interest on the notes, the full amount of the principal, plus interest and attorney's fees as subject to the subscription agreement–a total of $166,482.

ENTER:

Dated: August 26, 2003

REBECCA R. PALLMEYER
United States District Judge